UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                                    CASE NO. 00-6309-CR-SEITZ

CHARLES CLAY
        Defendant.
_____/

## OMNIBUS DISCOVERY REQUEST

Defendant Charles Clay, by and through the undersigned counsel, respectfully requests that this Court order the United States to disclose the following information:

### A. 404 (B) EVIDENCE

1. On March 29, 2001 the United States, by letter, informed the defense that:

> During 1985-1987, the defendant received approximately $15,000 from a member of a drug organization in return for information and protection of a cocaine distribution organization.

2. On April 9, 2001 at a discovery conference, counsel for the United States. Mr. Brian McCormick, informed the undersigned counsel that the information concerning this alleged payoff only recently surfaced. According to the United States, Mr. Clay provided information concerning criminal investigations of drug

1

trafficking organizations operating in Margate, Florida. Mr. Clay was paid a total of $15,000 in installments for his assistance to an organization headed by a Mr. Kleber. In the course of his assistance to this organization, Mr. Clay visited a garage which held drugs and ether. The government indicated that members of this organization had been prosecuted for their unlawful activities.

3. The United States would not identify the source of its information but indicated that it had a witness who was prepared to testify at trial. The United States declined to identify this witness. AUSA Brian McCormick did represent that he did not offer any inducements for this witness's cooperation. His disclaimed any knowledge of inducements provided by others.

4. While the United States would appear to be forthcoming in its disclosure of 404(b) evidence, in fact this disclosure is woefully inadequate to enable the defense to prepare for trial or to seek exclusion of this evidence.

5. First, the events in question occurred as much as 15 years ago. Although there is a record of a Henry Kleber being arrested in 1996, charges against this individual were later dropped. Not knowing the identities of the persons involved in criminal activity in the mid-1980's, counsel has no way of determining if there even was a criminal organization for the defendant to have assisted.

6. Second, the defendant is charged with assisting a gambling enterprise in the late 1990's. This is a far cry from being involved in a drug trafficking conspiracy in the mid-1980's. Although the government will no doubt claim that the assistance

was the same regardless of the nature of the criminal organization, we have no way of determining this without investigating the nature of the organization and the kind of assistance Mr. Clay allegedly provided to it. In these circumstances it is impossible to do so and therefore impossible to seek exclusion of this evidence on any but the most general grounds.

7. Third, the government's case against Charles Clay is ambiguous. The government claims that on a single occasion Charles Clay tipped off the Raffa organization to the fact that FBI agents were continuing to surveill a check cashing store that had previously been raided by the authorities. The proof of this allegation consists of the fact that in his capacity as a patrol officer for the City of Margate Police Department, Clay encountered an FBI undercover agent in an automobile conducting a surveillance of a check cashing store alleged to have been involved in criminal activity. Subsequently, Fred Scarola, a bookie for the organization, was recorded talking to a confidential informant stating that a City of Margate Cop had informed him of the FBI's surveillance. Clay's name was never mentioned. To support its allegation that the officer in question was Charles Clay the government will offer evidence that Mr. Clay had a gambling problem, frequented the same restaurant/bar Scarola frequented, and placed bets with the Raffa organization.

## MEMORANDUM OF LAW

8. Allegations of the defendant's involvement with a drug trafficking organization is highly inflammatory. It may well be excludable on the grounds of remoteness or undue prejudice. The possibility of prejudice is compounded by the fact that there is no standard of proof for the admission of 404(b) evidence and may be considered by the jury even if not proven beyond a reasonable doubt. *Huddleston v. United States*, 485 U.S. 681 (1988).

9. While the government's case may well be sufficient to get beyond a Rule 29 and while the government may be able to convince the jury that the Margate patrol officer referred to by Scarola was Clay, conviction is by no means a certainty. The government's case is circumstantial at best. And a jury could conceivably conclude that Clay's disclosure was inadvertent and not part of involvement in a criminal organization. There is a grave danger that evidence offered by the government pertaining to assistance rendered a drug trafficking organization 15 years ago, could become the real focus of the prosecution. In *United States v. Hubert*, 138 F.3d 912 (11th Cir. 1998) the Eleventh Circuit held that the trial court erred in admitting evidence of the accused's twenty year involvement in drug trafficking where the charges alleged that the defendant was involved in a conspiracy to posses with the intent to distribute drugs over a one year period. According to the court, this evidence was only relevant to showing the defendant's propensity to engage in criminal activity. Although the introduction of such evidence

was harmless in that case, it clearly would not be harmless in the instant one.

10. Rule 404(b) requires the United States to provide "general notice" of the extrinsic act evidence to be offered by the government. The purpose of this provision is to reduce surprise and promote early resolution of legal questions concerning the admissibility of such evidence. *United States v. Perez-Tosta*, 36 F.3d 1552 (11th Cir. 1994). In *Perez*, the Eleventh Circuit sustained a conviction despite a last minute disclosure of 404(b) evidence. But such tardy disclosure was not prejudicial to the defendant Perez' rights. In the instant case by contrast, the government's inadequate disclosure is prejudicial to defendant Clay's right to a fair trial. In the circumstances provided by this case, this Court should exercise its discretion to direct that the United States provide to the defense the following information:

    a. The identity of the government's witness to the alleged protection or payoff and the history of their cooperation with the government and rewards provided for their cooperation;

    b The identity of the person who paid money to the defendant;

    c. When the money was paid;

    d. Where the money was paid;

    e. The specific reason why a particular payment was made;

    f. The identities of all known participants in the criminal organization;

    g. The identities of any participant who was prosecuted and the style

of the cases brought;

    h. Specifics as to the information provided by the defendant;

    i. Any surveillance of the organization which picked up evidence of Clay's participation either directly, such as by photograph, video, or voice, or indirectly, such as by the defendant being mentioned by another member of the organization;

    j. Any physical evidence reflecting the defendant's participation in the criminal activities of the organization, such a financial records reflecting payments made to Clay or other documentary material reflecting information provided by Clay.

## B. STATEMENTS MADE BY THE DEFENDANT

11. In the course of informal discussions with the United States, the government has disclosed that the defendant made verbal and non-verbal statements that the government will seek to introduce in evidence. Specifically, the government claims that at the time of the arrest, Mr Clay denied knowing one of the other conspirators, Fred Scarola. The government also claims that when the FBI went to the defendant's home to arrest him, they found him hiding in a closet. The government intends to argue that both of these "statements" are evidence of consciousness of guilt. The defense requests that this Court direct the government to disclose any reports reflecting the circumstances surrounding both statements. Specifically, in order for the defense to challenge the admissibility of this evidence,

the government must disclose what questions were asked of Mr. Clay and what responses he reportedly gave. It may well be that the circumstances surrounding his post-arrest interview with the government will disclose that the defendant's failure to identify Scarola was the result of the government's questions and not an effort by Mr. Clay to deceive the agents.

## MEMORANDUM OF LAW

12. Rule 16(a)(1)(A) requires that the government provide the defense any report of a statement made by a defendant while being interrogated by a person known by the defendant to be a government agent and any statement made to a law enforcement agent that the government intends to use at trial. As to the statements made by the defendant at the time of his arrest which the United States will offer at the defendant's trial, the United States has yet to comply with this rule.

13. The importance of knowing exactly what the defendant said to arresting agents was graphically demonstrated in *United States v. Camargo-Vergara*, 57 F.3d 993 (11th Cir. 1995). In that case the Eleventh Circuit reversed a conviction where the government inadvertently misstated a statement made by the defendant at to an undercover agent at the time that he was shown the cocaine. At trial the agent testified that the defendant made an entirely different and far more incriminatory statement. According to the Eleventh Circuit, had the defendant know exactly what he was alleged to have said, he may have moved to suppress the

statement or subpoenaed other agents who were on the scene. Similarly, in *United States v. Noe*, 821 F.2d 604 (11th Cir. 1987) the Eleventh Circuit reversed a conviction where the government failed to disclose a recorded conversation with the defendant which undermined his alibi defense. Had he been aware of this statement, he may not have taken the stand and avoided the impeachment.

### C. BRADY/KYLES EVIDENCE

14. From discussions with the defense, the government is aware that the defense may contend at trial, that any disclosures made by Charles Clay were inadvertent and not made with criminal intent. Should the government be aware of any evidence, such as through the interview of any witness, that would support this theory of the defense, the government is on notice that such evidence is exculpatory and must be disclosed to the defense.

### MEMORANDUM OF LAW

15. It is well settled that the prosecutor must provide the defendant with all evidence in the government's possession materially favorable to the defendant's defense. *Brady v. Maryland*, 373 U.S. 83 (1963). When state and federal agencies cooperate, information in the possession of a state agency may be imputed to the federal agency. *Hays v. Alabama*, 85 F.3d 1492 (11th Cir. 1996). Information known

to investigative agencies will be attributed to the prosecutors. Thus where information known to the police is exculpatory, the fact that it is not known by the prosecutors does not excuse the *Brady* violation.

16. The instant case involves a joint federal/state investigation. Any information obtained during that investigation which is exculpatory no matter whether it was obtained by state or federal agents will be imputed to the prosecutors herein. To the extent that the agents/police are not aware of the significance of information in their possession the prosecutors are under a duty to inform the investigating officers of the nature of the defense so that they can inform the prosecuting authorities if they possess any evidence that would be material to the defense.

17. Finally, the defense requests:

a. That the government provide the report of any interview of any of its witnesses in which the witness was questioned about Charles Clay. To the extent that the government's witnesses were in a position to know who were the other members of the criminal organization, any statement reflecting a lack of knowledge of Clay and his alleged activities on behalf of the organization would be exculpatory.

b. That this Court direct the United States to ask its witnesses if they would be willing to be interviewed by the undersigned counsel solely as to Mr. Clay's alleged involvement in the conspiracy.

Respectfully submitted,

_[signature]_ for                          _[signature]_
Richard Hamar, Esq.                        Jon May, Esq
Fla. Bar No. 127562                        200 East Broward Blvd.
Maria Hamar, Esq.                          Suite 1210
Fla. Bar.No. 367214                        Fort Lauderdale, Fla. 33301.
2437 Briarcrest Rd.                        Fla. Bar No. 276571
Beverly Hills, CA 90210                    954.761.7201 office
310.550.0460 office                        954.767.8343 fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 1, 2001, a true and correct copy of the foregoing was sent by U.S. mail to:

Assistant U.S. Attorney
Brian McCormick
299 East Broward Blvd.
Fort Lauderdale, Fla. 33301

_[signature]_
Jon May, Esq.