UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA



UNITED STATES OF AMERICA,
    Plaintiff,

vs.                          CASE NO. 00-6309-CR-SEITZ

CHARLES CLAY,
    Defendant.
_____/

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE ON THE GROUNDS OF ILLEGAL SEARCH AND SEIZURE**

Defendant Charles Clay, by and through the undersigned counsel, respectfully requests that this Court suppress all evidence seized by the government from his home at the time of his arrest on the grounds that the evidence seized was the fruit on an unlawful search and seizure in violation of the Fourth Amendment. In support of this motion, the defendant would show the following:

**I. STATEMENT OF FACTS**

In the early morning of October 26, 2000, five special agents of the Federal Bureau of Investigation, and three Broward County Sheriff's Office Deputies armed only with an arrest warrant proceeded to arrest Charles Clay, a police officer with the City of Margate police department. The agents knocked and announced their

1

presence at approximately 7:20.

While the FBI had properly secured a warrant for Mr. Clay's arrest, it had not secured a warrant to search Mr. Clay's home. Nevertheless, while holding Mr. Clay at gunpoint, the arresting agents and officers proceeded to undertake a complete search of Mr. Clay's home, including a search of drawers, cabinets, and at least one closet. The agents and officers, by the government's own account, spent twenty-one minutes inside Mr. Clay's home.

When Mr. Clay expressly and repeatedly objected to the agents' search, the agents ignored his objections. One agent defiantly stated they didn't need a warrant. Another, his actions expressly contradicting his words, responded, "we're not searching your home." Upon seizing an item, one agent taunted Mr. Clay, asking "Is there anything here I'm not supposed to see?" As a result of the search, the agents seized some guest cards issued to the defendant by various hotels and casinos, as well as two personal checks, one written by the defendant to his girlfriend, and the other, a check written on his mother's account to a cable television company. The government agents' report of the arrest, dated October 30, 2000, states the items seized were in "plain view" where Mr. Clay was arrested.

## II. MEMORANDUM OF LAW

### A. THE AGENTS CAN NOT CURE THEIR ILLEGAL SEARCH AND SEIZURE BY INVOCATION OF THE PLAIN VIEW DOCTRINE.

In the course of a lawful search or arrest, an officer may seize incriminating evidence that is unnamed in a warrant, or for which the officer has no warrant, if such evidence is in plain view. *Coolidge v. New Hampshire*, 403 US 443 (1971). Two elements are required to validate a plain view seizure: (1) the prior intrusion must have been justified, whether by valid warrant, or one of the exceptions to the warrant requirement; (2) the incriminating nature of the item must be immediately apparent. *Horton v. California*, 496 US 128 (1990). Moreover, the Supreme Court has not automatically upheld plain-view seizures, but has subjected them to scrupulous Fourth Amendment inquiry. *Soldal v. Cook County, Illinois*, 506 U.S. 56, 66, (1992). "[I]n the absence of consent or a warrant permitting seizure of the items in question, such seizures can be justified only if they meet the probable-cause standard [citations omitted] and if they are unaccompanied by unlawful trespass [citations omitted]." *Id.*

The discovery of evidence in plain view means that the items must be perceived in an undisturbed condition; the position of an item, such as a stereo for example, cannot be altered in order to determine its serial number. *Arizona v. Hicks*, 480 U.S. 321 (1987). Similarly, where the police opened a bag to discover the nature of the partially-exposed object within it, and then discovered a gun, the

seizure was considered improper as the incriminating character of the evidence was not immediately apparent. *United States. v. Brown*, 79 F.3d 1499 (7th Cir. 1996). Neither was the opening of a lens case considered a valid search under the plain view doctrine, merely because of its proximity to a syringe. *United States v. Donnes*, 947 F.2d 1430 (10th Cir. 1991). In addition, printed materials, such as documents found in notebooks and folders, cannot be validly searched by police officers under the plain view doctrine. *United States v. Martin*, 640 F.Supp 543 (E.D.Ark. 1986). *United States v. Silva*, 714 F.Supp. 693 (S.D.N.Y. 1989).

Here, the FBI expressly identified its seizure of the defendant's property as having been in plain view where Mr. Clay was arrested. FBI report of 10-30-00. However, neither of the two elements required by the Plain View doctrine were satisfied.

(A) *The putatively incriminating nature of the evidence was not immediately apparent.*

(i) The casino guest cards were not in plain view; they were organized in a stack, and solidly bound by a rubber band, their internal contents thus concealed from plain view. The top card possessed no incriminating quality whatsoever; it merely documented Mr. Clay's membership in the Police Benevolent Association. The agents were only able to discover the contents of the cards by picking up the stack, removing the rubber band, and examining them. Moreover, even if they had been in plain view, in contrast with such items as drugs, drug

4

paraphernalia, and weapons, there is nothing criminal or inherently incriminating in the possession of such cards which are routinely distributed by hotels and casinos.

(ii) The agents also seized two personal checks, one written by Mr. Clay to his girlfriend for $15,000.00, and the other for $21.00 payable to a cable television subscription of the defendant's mother. The incriminating quality, if any, of such personal checks without more, lacks the requisite quality of being immediately apparent.

### B. THE AGENTS' SEARCH AND SEIZURE DID NOT PROCEED FROM A LEGITIMATE PROTECTIVE SWEEP.

The warrantless search of a home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, (1980). Moreover, even a lawful arrest inside a home does not give the police license to search the entire residence for evidence. *United States v. Caraza*, 843 F.2d 432 (11th Cir. 1988); *United States v. Satterfield*, 743 F.2d 827, 845 (11th Cir. 1984), cert denied, 471 U.S. 1117(1985). However, at the time of the arrest of a suspect in his or her home, the police are permitted to conduct a limited protective sweep of the premises if they reasonably believe that others may be present who pose a threat to the officers or others. *Maryland v. Buie*, 494 U.S. 325 (1990). Such a sweep may extend only to a cursory inspection of spaces where a person may be found, and it may last no longer than is required to dispel the suspicion of danger. A sweep is limited to places a potential attacker may

be concealed. *United States v. Ford*, 56 F3d 265 (CA6 1996). Moreover, the police must be able to articulate the basis of their suspicion that they are in danger from another person or persons on the premises at the place of the arrest. *United States v. Colbert*, 76 F.3d 773 (6th Cir. 1996). They are supposed to have specific and articulable facts that lead them to conclude that others may be present; they can not undertake broad sweeps as a matter of routine. *Newton v. State*, 378 So.2d 297 (Fla. App. 1979). A protective sweep "is not a full search, but rather a quick, cursory inspection of the premises, permitted when police officers reasonably believe, based upon specific and articulable facts, that the area to be swept harbors an individual posing danger to those on the arrest scene." *United States v. Hogan*, 38 F.3d 1148 (10th Cir. 1994). Thus, opening drawers during a protective sweep is an invalid search. *United States v. Hromada*, 49 F.3d 685 (11th Cir. 1995). Also, the sweep should not take more time than necessary. Id.(protective sweep allowed because it lasted no more than a minute, and was not "overextensive"). Looking between a mattress and boxsprings cannot be justified as a legitimate part of a security sweep, and evidence gleaned from such an invalid search must be excluded. *United States v. Blue*, 78 F.3d 56 (2d Cir. 1996). The examination of receipts in a box of documents is not authorized by a protective sweep. *United States v. Noushfar*, 78 F.3d 1442 (9th Cir. 1996). Looking under a mattress, or behind a window shade are not authorized in a security sweep. *United States v. Ford*, 56 F.3d 265 (D.C. Cir. 1995).

Here, the agents and officers had no specific or articulable facts that would have lead them to believe others were present; Mr. Clay lives alone. If the FBI did not know this, then, as special agents of an organization devoted to investigation, it certainly should have known. Yet, by the FBI's own account, the agents spent more than twenty minutes inside Mr. Clay's home, a home, it should be added that is relatively modest in size. The agents searched throughout the house, opening cabinets, drawers, and a closet, despite Mr. Clay's strong and repeated objection. They had no reason to undertake a security sweep of the defendant's home, and the evidence they seized from that search, as a result, should be suppressed.

For the foregoing reasons, we move for the suppression of the evidence seized from the defendant?s home at the time of his arrest.

*[signature]*  
Richard Hamar, Esq.  
Fla. Bar No. 127562  
Maria Hamar, Esq.  
Fla. Bar.No. 367214  
2437 Briarcrest Rd.  
Beverly Hills, CA 90210  
310.550.0460 office  

Respectfully submitted,  
*[signature]*  
Jon May, Esq.  
200 East Broward Blvd.  
Suite 1210  
Fort Lauderdale, Fla. 33301.  
Fla. Bar No. 276571  
954.761.7201 office  
954.767.8343 fax  

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 14, 2001, a true and correct copy of the foregoing was sent by U.S. mail to:

Assistant U.S. Attorney  
Brian McCormick  
299 East Broward Blvd.  
Fort Lauderdale, Fla. 33301  

*[signature]*  
Jon May, Esq.

8