NIGHT BOX
FILED

SEP 14 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
        Plaintiff,

vs.                                CASE NO. 00-6309-CR-SEITZ

CHARLES CLAY,
        Defendant.
_____/

### DEFENDANT'S MOTION TO SEVER ON THE GROUNDS THAT A JOINT TRIAL WILL BE FUNDAMENTALLY UNFAIR AND DENY THE DEFENDANT HIS SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS

Defendant Charles Clay, by and through the undersigned counsel, respectfully petitions the Court to sever his trial from that of the other co-defendants on the grounds that a joint trial will be fundamentally unfair and deny his Sixth Amendment right to compulsory process. In support of this motion, the defendant would show the following:

### I. STATEMENT OF FACTS

Defendant Charles Clay, an Officer with the City of Margate Police Department, was arrested on October 26, 2000 based on allegations by the government that he assisted others in an illegal gambling enterprise. Specifically,

1

the government charged Officer Clay with having tipped off the Raffa organization to the fact that FBI agents were engaging in surveillance of a check-cashing store for money-laundering, a store that had been previously raided by the authorities.

Freddie Scarola, an alleged bookie for the illegal organization associated with the store, was intercepted on tape talking to a confidential governmental informant. In that conversation, Scarola stated that a Margate cop was his source of the information that the FBI was engaged in surveillance of the check-cashing store. In fact, pursuant to his standard investigative duties as a police officer, Officer Clay had indeed discovered an FBI undercover agent engaged in surveillance of the store. However, while it would appear Scarola's comments implicate Officer Clay, in fact, Scarola learned the related facts second-hand, from the bartender at a restaurant that both Scarola and Officer Clay frequented. Scarola later admitted to a private investigator that he had been only been boasting when he told the CI that he had a source in the Margate Police Department. See Affidavit of William Venturi.

The bartender knew Officer Clay as a regular patron of the bar. Indeed, it was in response to an inquiry by the bartender that Officer Clay innocently, inadvertently, perhaps irresponsibly, mentioned his discovery of the undercover FBI agent engaged in surveillance outside the store. Needless to say, Officer Clay was not paid for the information, whether by Scarola, by the bartender, or by anyone. He mentioned the incident at the end of the work day as people routinely relate the distinctive events of their working lives.

If Officer Clay is tried jointly with Scarola, Scarola's critical exculpatory testimony, which otherwise will exonerate Clay, will not be available. Scarola, it is highly likely, will invoke his Fifth Amendment right against self-incrimination, and refuse to testify. If Officer Clay is tried severally, however, and Scarola feels free to testify forthrightly, his honest testimony will serve to exonerate Clay.

The only direct evidence that the government possesses is the recording of Scarola's conversation with the CI. The crucial issue in the charge against Officer Clay is how Scarola obtained the information that the check-cashing store was under surveillance by the FBI. At a joint trial, faced with the jeopardy of thorough cross-examination, it is unlikely that Scarola will choose to take the stand. And Clay will be unable to compel Scarola to testify as a witness against himself. As a result, Scarola's exculpatory testimony will be unavailable to exonerate Officer Clay. If, on the other hand, Officer Clay's trial is severed, and Scarola's trial precedes Clay's, then Clay may be able to establish his innocence if Scarola is not deterred from taking the stand.

A severance is therefore essential if Charles Clay is to receive a fair trial.

## II. MEMORANDUM OF LAW

Presented with a motion to sever based on a defendant's desire to offer exculpatory testimony to be provided by a co-defendant, a trial court may consider the following issues: (1) whether the moving defendant genuinely needs the co-defendant to testify; (2) the substance of the testimony; (3) whether the prospective testimony of the co-defendant is exculpatory; (4) the likelihood that the co-defendant will testify; (4) *United States v. DeSimone*, 660 F.2d 532, 539 (5th Cir. Unit B 1981); *Byrd v. Wainwright*, 428 F.2d 1017, 1018-19 (5th Cir. 1970). In other words, the trial court properly considers "the extent of potential prejudice to the defendant if the defendant is tried without the opportunity to elicit the co-defendant's testimony." *Byrd* at 1020. However, "the court is not required to sever where the possibility of the codefendant's testifying merely colorable or there is no showing that it is anything more than a gleam of possibility in the defendant's eye." *Byrd* at 1022. The Eleventh Circuit has placed importance on determining whether the codefendant is more likely to testify if the defendant is tried separately. *Byrd* at 1022, citing *Smith v. United States*, 385 F.2d 34, 38 (5th Cir. 1967). In short, a failure to grant a motion to sever violates due process if the joint trial of all the co-defendants renders the trial fundamentally unfair to the moving defendant. *Tifford v. Wainright*, 588 F.2d 954 (5th Cir. 1979), see also *United States v. Fernandez*, 892 F.2d 976 (11th Cir. 1989).

4

Here, the issues for consideration as set out by the *Byrd/DeSimone* decisions applied to the facts of the instant case weigh strongly in favor of the defendant: (1) Officer Clay has a bona fide need for the co-defendant Scarola to testify; indeed it is imperative for Clay's exoneration; (2) It is contemplated that Scarola will testify consistently with what he related to the private investigator: that Officer Clay was not the source of his information about the FBI surveillance of the check-cashing store, and that he does not know Officer Clay, except in passing as a periodic visitor to the tavern Scarola frequents; (3) such testimony by Scarola will serve to exculpate Officer Clay; (4) while the likelihood that Scarola will testify if the defendant's trial is severed is uncertain, it is highly unlikely that Scarola will subject himself to cross-examination and self-incrimination in a joint trial. Whether or not Scarola will testify at a separate trial for Officer Clay depends largely on whether Scarola is tried first, and then, on the result of his trial. If he is acquitted, or found guilty and chooses not to appeal, he will be immune from further prosecution, and so, no deterrent will stand in the way of his testifying forthrightly about the true meaning of his ambiguous reference to a Margate cop to the government's undercover informant.

If Officer Clay succeeds in establishing these facts, the court must then undertake further analysis. It must (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of testimony; (3) pay close attention to judicial

administration and economy; and (4) give weight to the timeliness of the motion. *United States v. DeSimone*, 660 F.2d 532, 540 (5th Cir. Unit B 1981).

Here, the significance of the testimony, and the extent of prejudice caused by its absence are crucial; without the honest testimony of Scarola, Officer Clay lacks the means to clarify the implications of Scarola's comments to the informant. Judicial economy and efficiency will not be undermined because there are only two counts against Officer Clay, concerning a single incident—his alleged willful provision of protective information to Scarola, and by implication, the Raffa organization. In any case, judicial economy and efficiency must ultimately yield to the defendant's right to a fair trial. *United States v. DiBernardo*, 880 F.2d 1216, 1228 (11th Cir. 1989). The instant motion for severance, well before trial has begun, does not suffer from any deficiencies in timeliness.

WHEREFORE, Defendant Charles Clay, respectfully requests that this Court sever the trial of his case from that of his co-defendants.

Respectfully submitted,

Richard Hamar, Esq.
Fla. Bar No. 127562
Maria Hamar, Esq.
Fla. Bar.No. 367214
2437 Briarcrest Rd.
Beverly Hills, CA 90210
310.550.0460 office

Jon May, Esq
200 East Broward Blvd.
Suite 1210
Fort Lauderdale, Fla. 33301.
Fla. Bar No. 276571
954.761.7201 office
954.767.8343 fax

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 14, 2001, a true and correct copy of the foregoing was sent by U.S. mail to:

Assistant U.S. Attorney
Brian McCormick
299 East Broward Blvd.
Fort Lauderdale, Fla. 33301

Jon May, Esq.

## STATEMENT OF WILLIAM VENTURI

I, William Venturi, state that the following is true:

For the past sixteen years I have been an investigator licensed by the State of Florida. Prior to that I was a homicide detective with the Metro-Dade Police Department. I have been retained to assist attorneys Jon May and Richard Hamar in the case of *United States v. Raffa*, Case No. 00-6309-CR-SEITZ.

In my capacity as an investigator I was asked to interview Frederick Scarola, a co-defendant in this case.

Mr. Scarola subsequently agreed to meet with me and when asked to review the transcript of his recorded conversations of February 4 and 11, 2000, stated that the information contained in the recordings was not true. He advised that he was boasting when he said that he had received the information from a friend that was a Margate cop. In fact he only knows Charles Clay from seeing him at Tony Roma's. He further related that he had received the information discussed in the recordings from a bartender who works at Tony Roma's.

This statement is made under penalty of perjury.

William Venturi
August 9, 2001