UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
        Plaintiff,

vs.                                CASE NO. 00-6309-CR-SEITZ

CHARLES CLAY,
        Defendant.
_____/

## DEFENDANT'S MOTION TO SUPPRESS HIS POST-ARREST STATEMENTS ON THE GROUNDS THEY WERE ELICITED BY THE GOVERNMENT IN VIOLATION OF HIS MIRANDA RIGHTS

Defendant Charles Clay, by and through the undersigned counsel, respectfully requests that this Court suppress his post-arrest statements on the grounds that they were elicited by the government in violation of the Defendant's right to remain silent and to have the assistance of counsel during questioning. In support of this motion, the defendant would show the following:

### I. STATEMENT OF FACTS

At 7:20 in the morning, on October 26, 2000, a team of five FBI agents, and three deputies from the Broward County Sheriff's Office arrested Margate police officer Charles Clay for obstruction of justice. Twenty-two minutes later, in the back of an unmarked blue, four-door Chevrolet, an FBI agent advised Mr. Clay of his Miranda rights. As the FBI's report of the arrest duly notes, Mr. Clay expressly

1

stated his wish to speak with an attorney before making any formal statements. In response to the agent's recitation of the Miranda rights, Officer Clay expressly stated, "I am not making any further statements until I can consult with a lawyer, and I want a lawyer." A more articulate and emphatic invocation of Miranda rights by a defendant is difficult to imagine.

Officer Clay had found himself overtaken by a rapid succession of events that had transpired over the previous half-hour: (1) eight federal and state officers confronted him at his home at 7:20 in the morning with a warrant for his arrest; (2) one of the agents sought to enter his home forcibly despite the absence of resistance, or any other justifying exigency; (3) while holding a gun to the defendant's head, the agents undertook a twenty-minute warrantless search of his home; (4) despite the absence of a warrant to search, the agents seized personal property of the officer; (5) Officer Clay found himself handcuffed and placed in the back of an FBI vehicle as his Miranda rights were read to him.

After being placed in the agents car, Clay expressed dumbfoundment at his arrest. Although the defendant had just invoked his right to remain silent and his right to counsel in a manner that was both express and emphatic, the FBI agent took Officer Clay's observation as an opportunity to obtain information from him. Agent Lofton placed an indictment before Mr. Clay, stating, "all the charges against you are outlined in this indictment." Officer Clay was handcuffed and so, was not in the position to accept or refuse the document that Officer Agent held before him.

2

The FBI agent then asked Officer Clay if he recognized any of the names on the indictment. Officer Clay glanced at the list of names and truthfully replied, "No, I don't know any of those people; these names do not look familiar to me." By undertaking an interrogation of Officer Clay after the officer had expressly and emphatically invoked his constitutionally-protected rights to remain silent, and to counsel, the FBI agent violated the defendant's rights. In fact, by invoking his Miranda rights in the FBI car that morning, Officer Clay had repeated an identical invocation of those same rights when, inside his home twenty minutes earlier, having just arisen from bed, and in a state of undress, he was first advised he was under arrest.

In questioning Officer Clay after he had formally and unequivocally invoked his Miranda rights, not once but twice, the government flagrantly violated the defendant's Constitutional rights to remain silent, and to have an attorney present during questioning. It is for this reason that we respectfully petition the Court to suppress the statements elicited from the defendant by the government after his arrest.

## II. MEMORANDUM OF LAW

### IN QUESTIONING THE DEFENDANT, THE GOVERNMENT VIOLATED THE DEFENDANT'S RIGHTS TO REMAIN SILENT AND TO COUNSEL, WHICH RIGHTS THE DEFENDANT HAD EXPRESSLY AND REPEATEDLY INVOKED.

The Fifth Amendment of the Constitution protects citizens from being compelled to be witnesses against themselves in criminal cases. In order to protect this right, officers of the law are required to inform citizens suspected of a crime of their ancillary rights to remain silent, and to have an attorney present during questioning. *Miranda v. Arizona*, 384 U.S. 436 (1966).

While a defendant may waive his or her *Miranda* rights, rendering his subsequent statements admissible as evidence, such a waiver must be free and deliberately chosen and not take place as the result of intimidation, coercion, or deception. *Id.* at 457. The government bears a heavy burden; it must prove the waiver was voluntary, knowing, and intelligent. *Schneckloth v. Bustamente*, 412 U.S. 218 (1973). The defendant must be fully aware of the nature of his or her Miranda rights, and the consequences of abandoning them. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

If a suspect indicates in any way, or at any point, that he or she does not wish to be questioned, or wishes to consult with an attorney, then the police must halt all

4

further questioning. *Miranda* at 444-445. Moreover, the courts will hold any words or actions by the police that they should know are reasonably likely to elicit an incriminating response as the functional equivalent of proscribed interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1979). A suspect's Miranda rights, once invoked by a defendant, must be scrupulously honored. *Michigan v. Mosley*, 423 US 96 (1975). "[T]he interrogation must cease until an attorney is present." *Miranda* at 474. It is a bright-line rule that interrogation must end upon a suspect's invocation of his right to counsel. *United States v. Gomez*, 927 F.2d 1530 (11th Cir. 1991)(citing *United States v. Johnson*, 812 F.2d 1329 (11th Cir. 1986).

Once an interrogation is terminated by a suspect's invocation of his *Miranda* rights, the police are limited in subsequent discussions with the suspect to matters "relating to routine incidents of the custodial relationship" such as asking the accused if he would like a drink of water. *Christopher v. State of Florida*, 82 F.2d 836, 845 (11th Cir. 1987). Any other form of inquiry must be considered a continuation of interrogation. *Id*. The police are not permitted to "open up a more generalized discussion relating to the investigation" *Id*; *Johnson*, 812 F.2d at 1331; see *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

The Supreme Court held in *Edwards v. Arizona*. 451 U.S. 477 (1981), that, "once an accused has invoked the right to counsel, a valid waiver of that right cannot be established by showing only that he responded to a later police initiated interrogation." *Basset v. Singletary*, 105 F.3d 1385 (11th Cir. 1997) (citing *Edwards*

5

*v. Arizona* at 484, at 1884-85). The Court ruled in *Edwards* that when an accused individual asserts his right to counsel, a Miranda waiver is impossible unless the person himself initiates an exchange with the police. *Id* at 477. Thus, after invoking his *Miranda* rights, even if a suspect responds to questions by police, his right to remain silent is not thereby invalidated. *Christopher v. State of Florida*, 82 F.2d 836, 841 (11th Cir. 1987). The fact that a defendant responds to such questions has no bearing on his invocation of his right to remain silent. *Christopher* at 841. "[A]n accused's post-request responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." Christopher, quoting *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

However, if the suspect affirmatively initiates the conversation with police, their ensuing questions do not, according to the Supreme Court and the Eleventh Circuit, constitute prohibited "interrogation. *Christopher* citing *Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981); see *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-45 (1983). However, the Eleventh circuit observed that, in order for statements following request for counsel to be admissible, not only must the state show that the suspect "initiated" further conversation; it must also demonstrate that the suspect validly waived his previously asserted right to counsel and right to silence . . . *Christopher* at 845 fn21. (11th Cir. 1987). (citing *Bradshaw*, which though a plurality opinion, is supported by the dissent on this issue). Even if a defendant has initiated contact with the police after requesting counsel, any statements made are still

6

inadmissible unless they are the product of a knowing and voluntary waiver. *Dunkins v. Thigpen*, 854 F.2d 394 (11th Cir. 1988). See *Bradshaw*, 462 US at 1045 1054 n.2 (Marshall, J. dissenting); *Wyrick v. Fields*, 459 US 42, 46-48 (1982); *Edwards*, 451 U.S. at 486 n.9, 101 S.Ct at 1885 n.9.

In *Basset v. Singletary*, 105 F.3d 1385 (11th Cir. 1997), the defendant first invoked his *Miranda* right to counsel, but then initiated further conversation, directing a question to the police by expressly and specifically asking what they wanted. *Id.* at 1387. Under such circumstances, the Eleventh Circuit ruled the defendant's rights were not violated. *Id.* at 1388. Where a defendant asked police where he was being taken, which question was put to the police hours after the defendant invoked his *Miranda* rights, the defendant's statements that resulted from the ensuing discussion were deemed admissible. *United States v. Valdez*, 880 F.2d 1230, 1233-34 (11th Cir. 1989). In contrast, in *United States v. Gomez*, 927 F.2d 1530 (11th Cir. 1991), where the discussion with the defendant took place immediately after the defendant had invoked his right to counsel, the defendant's comments were ruled inadmissible. *Id.* at 1537.

Here, unlike *Valdez*, *Bassett*, and even *Gomez*, Officer Clay did not ask the police a question; rather he merely reflected aloud upon the circumstances that had overtaken him, in what amounted to a purely reflexive expression of his state of mind at the tumultuous moment: "I'm confused how I could be involved in all this." Officer Clay was merely "thinking out loud," conduct to which a person may be

7

especially inclined under the stress of precipitating events. The natural discharge of anxiety through the utterance of confusion or disbelief is not an invitation to officers to engage a suspect in conversation, in contradiction of Constitutional rights expressly and repeatedly invoked. That is to say, a casual, offhand statement is not an initiation of "further communication, exchanges, or conversations with the police" which might otherwise constitute a waiver. *Edwards* at 484-485, at 1885.

However, even if the court would find that Officer Clay's statement expressing confusion constituted an initiation of conversation with the police, the government must still demonstrate that the officer's words were the product of a knowing and voluntary waiver. See *Schneckloth*, and *Dunkins v. Thigpen, supra.* )

Moreover, while a defendant's ambiguous comments may, in some circumstances, be regarded as sufficient to constitute a re-initiation under *Edwards*. See *Oregon v. Bradshaw*, 462 U.S. 1239 (1983). The Eleventh Circuit has held that when a defendant's request to discontinue interrogation is equivocal, the exclusive proper response is to clarify the defendant's intentions. *Henderson v. Singletary*, 968 F.2d 1070 (11th Cir. 1992), citing *Martin v. Wainwright*, 770 F.2d 918, 924 (11th Cir. 1985). "It is well settled that even an equivocal invocation by the suspect of the right to cut off questioning requires that the interrogation cease, and further questions are limited to clarifying whether the suspect in fact desires to terminate the interrogation." *Delap v. Dugger*, 890 F.2d 285, 290 (11th Cir. 1989).

Here, while no interrogation had begun, the FBI interpreted Officer Clay's

8

statement about his confusion as an initiation of conversation. However, because such an interpretation would suggest a direct contradiction of the defendant's twice-invoked rights to remain silent and to counsel, which second invocation took place just moments before, the government agent should have sought to clarify the defendant's intentions, not blithely regard it as an opportunity to elicit statements in flagrant disregard of the rights the defendant had just expressly invoked.

As an instrument of intimidation, a governmental indictment of a citizen carries with it formidable power in two forms; the fundamental power of the written word, and the even more awesome power of governmental authority. Here, agent Lofton knew that showing an indictment to Officer Clay, with the defendant's name listed amidst other names, was reasonably likely to elicit a potentially incriminating response. Moreover, while Officer Clay was under the acute stress of having been seized by warrant from his home, having his home searched, and having been handcuffed, the FBI agent proceeded to undertake questioning of Officer Clay about his knowledge of those listed on the indictment, in a flagrant violation of Officer Clay's repeated and emphatic invocation of his *Miranda* right to remain silent, and to counsel. The agents of the FBI not only failed to scrupulously honor the defendant's rights by questioning him after he had twice invoked those rights; they failed to honor them at all.

For the foregoing reasons, we respectfully request the court to suppress the statements elicited by the government from the defendant after his arrest.

Respectfully submitted,

Richard Hamar, Esq.
Fla. Bar No. 127562
Maria Hamar, Esq.
Fla. Bar.No. 367214
2437 Briarcrest Rd.
Beverly Hills, CA 90210
310.550.0460 office

Jon May, Esq
200 East Broward Blvd.
Suite 1210
Fort Lauderdale, Fla. 33301.
Fla. Bar No. 276571
954.761.7201 office
954.767.8343 fax

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2001, a true and correct copy of the foregoing was sent by U.S. mail to:

Assistant U.S. Attorney
Brian McCormick
299 East Broward Blvd.
Fort Lauderdale, Fla. 33301

Jon May, Esq.

10