UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ(s)(s)

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES CLAY,

Defendant.
_____/

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT
CLAY'S MOTION TO SUPPRESS EVIDENCE ON GROUNDS
OF ILLEGAL SEARCH AND SEIZURE
AND INCORPORATED MEMORANDUM OF LAW

The United States of America, through its undersigned
Assistant United States Attorneys, files this response in
opposition to defendant Clay's Motion to Suppress Evidence on the
Grounds of Illegal Search and Seizure. For the reasons set forth
below, the government submits that the defendant's motion should be
denied.

**Statement of Facts**

On October 24, 2000, a sealed indictment was returned against
the defendant and eighteen others. The defendant was specifically
charged in Counts 2 and 3 of the indictment: Count 2 charges the
defendant and seven others with running an illegal gambling
business; Count 3 charges the defendant, Mamone, and Scarola with
obstructing state and local law enforcement with the intent to aid
a gambling business. An arrest warrant was issued for the
defendant pursuant to the indictment.

Special Agents of the Federal Bureau of Investigation (FBI), along with Broward Sheriff's Deputies, first arrived at the defendant's residence at approximately 6:00 a.m. on October 26, 2000. The agents were aware that the defendant was a veteran police officer of twenty-five years with the Margate Police Department and therefore authorized to carry a weapon. Despite repeated knocking on the door and windows while announcing their presence, as well as attempts to call the defendant on his telephone, he did not respond until approximately 7:20 a.m. as the agents were preparing to forcefully enter the premises.

When the defendant finally opened the door, he was clad only in his underwear. He was placed under arrest, at which time he was informed by an FBI special agent of the charges of the indictment. In the residence plainly visible and near where the defendant was placed under arrest were a number of items related to gambling and financial matters. These included casino membership cards in the name of Charles P. Clay: Caesars Emperors Club, Crystal Palace Casino, Castle Card-Trump's Castle Casino Resort (2), Atlantis Players Access, The Grand VIP, Sea Escape VIP, Vegas Express & Tugboat Annies. Also seized at that location was a Broward County Police Benevolent Association (PBA) Member Card[1] and two checks:

---

[1]    The PBA card was mixed in with the casino membership cards. The government does not intend to utilize the PBA card in its case-in-chief. Therefore, defendant's motion to suppress the PBA card is moot.

one was dated September 15, 2000, for $15,000, made out to Annette Sabino, and noted as being for expenses; the other was dated October 15, 2000, in the amount of $21.00, made payable to Dish Network Cable, and ostensibly signed by Margaret M. Dolan.[2]

An immediate protective sweep[3] was made of the defendant's residence to ensure that there were no other persons present and the defendant was permitted to get dressed. The defendant then departed under arrest in the agents' vehicle.

The entire procedure from the time the defendant was placed under arrest until they departed his residence took approximately twenty minutes.[4]

### Memorandum of Law

The defendant argues that the cards and checks seized from the defendant's residence at the time of his arrest should be suppressed under the Fourth Amendment because they do not qualify under the plain view doctrine.

---

[2]    Margaret M. Dolan is the defendant's mother, who had been deceased for some time.

[3]    There were no items of evidence seized during the protective sweep of defendant's residence.

[4]    Although not at issue, a number of other items were also seized from the defendant, all of which have been provided in discovery. Specifically, the defendant surrendered his Margate Police issued handgun, his badge, three handgun magazines, an automotive key for his Margate Police Cruiser, and a Motorola radio system with microphone. In addition, with the consent of the Margate Police, the defendant's police cruiser was later searched and a number of documents were taken from it.

To begin with, the agents were present in the defendant's home pursuant to a lawful arrest warrant and the search which ensued was pursuant to a lawful arrest.  The items seized from the defendant's residence were, in fact, in plain view and should not be suppressed.

Three conditions must be satisfied to justify a plain view seizure of evidence: 1) that the officers did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; 2) that the searching officer had a lawful right of access to the evidence itself; and, 3) that the incriminating character of the evidence must be immediately apparent.  *Horton v. California*, 496 U.S. 128, 136-37 (1990).

There is no question, and the defendant does not dispute, that the arresting agents were in his residence pursuant to a lawful arrest warrant when they viewed the evidence. *United States v. Watchmaker*, 761 F.2d 1459, 1472-73 (11th Cir. 1985).

The defendant does claim, however, that the seizure of the items occurred during a general search of the defendant's residence, which included the opening of drawers, cabinets and at least one closet.  The government disputes this factual rendition of the seizure of these items and points out that there were no items of evidence seized during the protective sweep of defendant's residence.  Rather, the cards and checks were plainly visible in the immediate vicinity where the defendant was placed under arrest;

they were exposed and immediately visible to the seizing agents.

The defendant also argues that the arresting officers were not entitled to make a protective sweep of the residence because the defendant lives alone. However that disregards the clear language of the Supreme Court in *Maryland v. Buie*, 494 U.S. 325 (1990), in which they stated that when an arrest takes place within a home, the arresting officers are permitted to take reasonable steps to ensure their safety and may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id*. at 334. Nothing more was done here. Further, because of the lengthy delay of the defendant in responding to the officers announcement of their presence, as well as the fact that he was a police officer with access to weapons, the arresting agents were more than justified in making a quick sweep of the residence to ensure their safety.

Defendant also complains that the incriminating nature of the evidence was not readily apparent. As the Fifth Circuit explained in *United States v. Hill*, 19 F.3d 984, 989 (5th Cir. 1994), "[i]t is not necessary 'that the officer know that the discovered res *is* contraband or evidence of a crime, but only that there be a practical, nontechnical probability that incriminating evidence is involved.'" *(quoting United States v. Espinoza*, 826 F.2d 317 (5th Cir. 1987). The court explained that the item viewed must either

5

be contraband or useful in establishing that a crime has been committed.  *United States v. Hill*, 19 F.3d at 989.

The incriminating nature of these cards, given the charges in this case, was readily apparent to the seizing agents.  The defendant is charged with being part of a gambling organization. Further, as the government intends to prove at trial, the defendant himself was an inveterate gambler.  The proof at trial will show that the defendant was consistently placing bets with a Trafficante bookmaking organization through codefendant Scarola, notwithstanding the fact that he is a police officer with a modest income.  Evidence of his membership with casinos and gambling ships is relevant because it assists in establishing that this defendant is involved in gambling.  Thus it has probative value in establishing his bookmaking activities and involvement with Scarola's criminal bookmaking organization.  Finally, this evidence is relevant to show why the defendant aided Scarola's bookmaking business by warning him of possible law enforcement investigations (the subject of Counts 2 and 3 of the indictment).

In light of the charges and the nature of the evidence against the defendant, the import of the gaming cards was readily apparent to the seizing agents.  Therefore they qualify under the plain view exception and should not be suppressed.

As to the two checks that were seized, they are as well incriminating.  The $15,000 check drawn on the defendant's account

is probative of the fact that the defendant, who has a modest salary as a police officer, was engaging in substantial monetary transactions.   This supports the fact that he is employed by the enterprise described in the indictment because of this unexplained substantial financial transaction.

The second check seized was in a small amount, however it was ostensibly signed by the defendant's mother, presumably after she had died.   Therefore it appears to be some type of fraudulent check and is therefore also incriminating.

For all of these reasons, the incriminating nature of the two checks was readily apparent to the seizing officers.   Therefore these also qualify under the plain view exception and should not be suppressed.

### Conclusion

WHEREFORE, for all the foregoing reasons, the government respectfully requests that this Honorable Court deny defendant

Clay's motion for suppression of evidence based on illegal search and seizure.

Respectfully submitted,

GUY E.   LEWIS
UNITED STATES ATTORNEY

By: _____
J.  BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500084
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230


By: _____
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500017
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

8

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was mailed this *14th* day of *November*, 2001 to:

David Rothman, Esq.
First Union Financial Ctr.
200 S Biscayne Blvd., Ste 2690
Miami, FL 33131
(Counsel for John Mamone)

Jayne Weintraub, Esq.
100 S.E. 2nd St., Suite 3550
Miami, FL 33131
(Counsel for Joseph Russo)

John Howes, Esq.
633 S.E. Third Ave., Suite 4F
Fort Lauderdale, FL 33302
(Counsel for Fred Morgenstern)

Scott William Sakin, Esq.
1411 NW North River Drive
Miami, FL 33125
(Counsel for David Morgenstern)

Emmanuel Perez, Esq.
2121 Ponce de Leon Blvd.
Suite 290
Coral Gables, FL 33134-5222
(Counsel for Joseph Silvestri)

Brian L. Tannebaum, Esq.
First Union Financial Center
200 South Biscayne Blvd.,#2690
Miami, FL 33131
(Counsel for Michael Buccinna)

Jeffrey M. Harris, Esq.
One East Broward Blvd., #1500
Fort Lauderdale, FL 33301
(Counsel for David Bell)

Kenneth M. Swartz, Esq.
100 N. Biscayne Blvd.
21st Floor, New World Tower
Miami, FL 33132
(Counsel for John O'Sullivan)

Philip R. Horowitz, Esq.
12651 S. Dixie Hwy., Ste. 328
Miami, FL 33156
(Counsel for Mark Weiss)

James Benjamin, Esq.
1 Financial Plaza, Suite 1615
Fort Lauderdale, FL 33394
(Counsel for Mark Carattini)

Joseph S. Rosenbaum, Esq.
2400 South Dixie Highway, Suite 105
Miami, FL 33133
(Counsel for Anson Klinger)

David Tarlow, Esq.
801 Brickell Avenue, Suite 1901
Miami, FL 33131-2900
(Counsel for Frederick Scarola)

Jon May, Esq.
110 S.E. Sixth St.
Suite 1970
Fort Lauderdale, FL 33301
(Counsel for Charles Clay)

Howard Srebnick, Esq.
201 S. Biscayne Blvd., Suite 1300
Miami, FL 33131
(Counsel for Doreen Russo)

DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

9