UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-Seitz/Garber



UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES CLAY,

    Defendant.
_____/

### OMNIBUS REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Patricia A. Seitz. Pursuant to such reference the Court has received the defendant Clay's (1) Motion to Suppress Evidence on the Grounds of Illegal Search and Seizure, and (2) Motion to Suppress Post-Arrest Statements on the Grounds They Were Elicited in Violation of his *Miranda* Rights, and the government's responses in opposition. The Court held a hearing on said Motions on November 28th, 2001. Pursuant to the Order of Reference the following Omnibus Report and Recommendation is hereby submitted.

### BACKGROUND

On October 24th, 2000 the defendant and others were indicted in this District. Clay, whom the arresting officers knew to be a police officer with the Margate, Florida police department, was specifically charged with running an illegal gambling business



(Count 2), and with obstructing state and local law enforcement with the intention of aiding such gambling business. An arrest warrant was issued for the defendant Clay.

Armed with the arrest warrant, law enforcement officers (FBI agents and Broward County Deputy Sheriffs) arrived at Clay's known address on October 26th, 2000 at 6:00 A.M. They knocked on his door repeatedly, advising that they were FBI and police officers, had an arrest warrant and needed to speak with him. They received no response. They looked inside of the residence and walked around it, finding no one present at that time. A number of the officers then proceeded to a location which was believed to be the defendant's girlfriend's residence. In speaking with the girlfriend, Annette Sabino, the officers learned that the defendant's mother had died "some time ago."[1] The officers then returned to the defendant's residence and were preparing to forcefully enter the premises at about 7:30 A.M. when Mr. Clay, wearing undershorts and a tee shirt, finally opened the door. He was arrested and advised of the nature of the charges against him. The officers then conducted a permissible sweep of the premises to determine the presence of any other persons or weapons and found neither. The defendant then got dressed and was handcuffed. The officers then holstered their weapons which they had drawn during the entry to the residence.

At the hearing on the motions Special Agent Lionel Lofton of the FBI was called to testify. He essentially testified *inter alia* to the facts set forth above, as well as additional facts referred to herein.

---

[1] Transcript of Hearing, page 15.

Agent Lofton testified that while standing in the area which was described as a living room/dining room he noticed a dining room table on which were *inter alia* "a stack of cards, plastic credit card like things, the top one of the stack being a casino boat or a gambling club card which, based on the charges that were against Mr. Clay, I thought at that time that maybe they showed a predisposition to either having been at these places or continuing to go to these places for gambling and maybe showed that he may have had some type of gambling problem."[2] Agent Lofton testified that he took the stack of cards, which he identified at the hearing. Although the stack contained a Police Benevolent Association card, Agent Lofton advised that it was not on top of the stack. He had testified that his attention was called to the stack of cards because the top card indicated some gambling facility.[3]

Agent Lofton also testified that he seized two checks that were on the table; one was in the amount of 15 thousand dollars, payable to Annette Sabino, and signed by the defendant. Lofton said he took the check since it "seemed like a large amount of money, again, from a police officer's salary to be writing for expenses of a significant other. It just didn't seem normal."[4] He testified that the other check was for 21 dollars written on the account of and by Margaret M. Dolan, the defendant Clay's mother, and was dated October 15, 2000. Agent Lofton said he took the check because he had learned that the defendant's mother had died prior to the date on the check.

---

[2]Transcript, page 19.

[3]Transcript, page 20.

[4]Transcript, page 23.

Agent Lofton testified that at the time of the arrest he advised Clay that the charges arose out of his association with a Freddie Scarola (a co-defendant in this cause). Clay denied knowing Scarola. Lofton then told the defendant that once he was dressed the charges would be more fully explained to him.

The defendant was placed in a vehicle for transportation to the FBI offices for booking. Lofton then advised the defendant, from the indictment, of the charges against him. He then *Mirandized* the defendant, who stated that he wanted to talk with his attorney before talking with anyone else. Thereafter Lofton asked biographical questions of the defendant as part of the data required during the arrest and booking process. During this conversation the defendant asked Agent Lofton whether any other people were being arrested. Lofton then read the names of those persons named in the indictment. Clay stated that he only knew one of such persons, Morgenstern, about whom he had previously been questioned by the FBI. No additional conversation took place between the defendant and Agent Lofton.[5]

It is basically upon the factual scenario set forth above that the defendant has filed his two Motions to Suppress. Each of said motions are now considered by the Court.

## DISCUSSION

### MOTION TO SUPPRESS EVIDENCE ON THE GROUNDS OF ILLEGAL SEARCH AND SEIZURE

The evidence sought to be suppressed by this motion consists of the stack of eight (8) casino membership cards, a Broward County Police Benevolent Association member

---

[5]Transcript, page 29.

card, and two checks. The government claims that such items were in plain view during the arrest of the defendant and were not seized as a result of a search of the defendant's premises. The defense claims, however, that the seizure was not in accordance with the plain view doctrine in that it fails to satisfy a probable cause finding.

It is agreed that during the course of a lawful arrest an officer may seize incriminating evidence, without a warrant, if such evidence is in plain view. Coolidge v. New Hampshire, 403 U.S. 443 (1971). A plain view seizure requires a showing that (1) the prior intrusion was justified, whether by valid warrant or one of the exceptions thereto, and (2) the incriminating nature of the item seized must be immediately apparent. Horton v. California, 496 U.S. 128 (1990).

Plain view seizures are subject to scrupulous Fourth Amendment inquiry. Soldal v. Cook County, Illinois, 506 U.S. 56,66 (1992). Supreme Court Justice Antonin Scalia, writing for the majority in Arizona v. Hicks, 480 U.S. 321, stated that the Supreme Court "granted certiorari . . .in the present case to decide whether this 'plain view' doctrine may be invoked when the police have less than probable cause to believe that the item in question is evidence of a crime or is contraband." Justice Scalia then stated that "[W]e now hold that probable cause is required."

Applying the standards set forth in Horton, *supra*, the undersigned finds that the incriminating nature of the items seized was not immediately apparent. The cards for various gambling casinos have not been shown to be unlawful for they were for attendance at lawfully licensed operations within states that permit casino gambling. The Court cannot make a finding that such cards are related to the unlawful activities

charged against this defendant in the indictment. Although the law enforcement officers that made the seizure might have had a reasonable suspicion that such cards might have been related to the charges in this cause, such reasonable suspicion does not rise to the level of probable cause that they were, in fact, either contraband or evidence of a crime.

A review of the record in this cause and the testimony offered at the suppression hearing mandates a finding that there existed no probable cause for the seizure of the two checks. Agent Lofton, in his testimony, stated that the check for 15 thousand dollars, ""just seemed like a large amount of money."[6] He further stated that it "Just seemed like a large amount of money, again, from a police officer's salary to be writing for expenses of a significant other."[7] Such testimony, at best, is speculative and falls far short of the requisite probable cause necessary for a plain view seizure. Arizona v. Hicks, *supra*.

As to the check for 21 dollars written on the defendant's mother's account, such check bears no relationship to the cause pending before this Court. The defendant's possession of said check was not unlawful in the absence of a basis for believing that it was part of a fraudulent scheme. No such basis exists here. Certainly such check, facially, did not appear to be related to any gambling activities whatsoever.

Accordingly, the undersigned shall recommend that the Motion to Suppress Evidence, etc. be granted.

---

[6] Transcript, at page 22.

[7] Transcript, at page 23.

### MOTION TO SUPPRESS POST-ARREST STATEMENTS ON GROUNDS THAT THEY WERE ELICITED BY THE GOVERNMENT IN VIOLATION OF HIS *MIRANDA* RIGHTS

The defendant claims that statements or utterances made by him at the time of his arrest and immediately thereafter must be suppressed since he had invoked his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). The Court finds that the defendant's position is not supported by the facts or the law.

It is true that the statements made by the defendant took place while he was in custody. However, his initial statement that he did not know co-defendant Scariola was not in response to a question; it was an unsolicited voluntary statement and not subject to the *Miranda* requirements.

The defense argues that the exchange between Agent Lofton and the defendant was the functional equivalent of express questioning. Rhode Island v. Innis, 446 U.S. 291, 300 N.E. 1st Avenue, Miami, Florida 33132-01 (1980). In effect, the defense claims that the actions of Agent Lofton in reading the indictment and naming the defendants were "reasonably likely to elicit an incriminating response from the defendant." *Id.* at 301.

Agent Lofton merely responded to the defendant's claimed rhetorical question as to how he could be involved. Lofton advised the defendant that his involvement had something to do with co-defendant Scariola. Such statement was not likely to elicit a response from Clay.

Remarks made subsequently by the defendant Clay followed the giving of his *Miranda* rights, following which he stated that he wished to have an attorney prior to

any further conversation. Accordingly, no questions were thereafter propounded to the defendant. However, the defendant thereafter initiated further conversation regarding the charges against him. This constituted a waiver of his right to counsel, thus making any subsequent statements admissible against him. See Henderson v. Singletary, 968 F.2d 1070 (11th Cir. 1992); Edwards v. Arizona, 451 U.S. 477 (1981); United States v. Valdez, 880 f.2d 1230, 1233-34 (11th Cir. 1989).

In considering the issue of waiver the defendant's background becomes significant. The defendant, a veteran of over 20 years of police service, was knowledgeable about the rights of a defendant. Such fact weighs heavily in favor of the finding of waiver.

## CONCLUSION AND RECOMMENDATION

For the reasons set forth above and upon due and careful consideration, the undersigned respectfully

RECOMMENDS that:

1. The defendant's Motion to Suppress Evidence on the Grounds of Illegal Search and Seizure be GRANTED.

2. The defendant's Motion to Suppress Post-Arrest Statements, etc. be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Patricia A. Seitz. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 9th day of January, 2002.

                                                            BARRY L. GARBER
                                                            UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
U.S. District Judge Seitz
J. Brian McCormick, Assistant United States Attorney
Diana L.W. Fernandez, Assistant United States Attorney
Jon May, Esquire
Richard Hamar, Esquire